UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Elaine Z. Fibranz,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Georgian Z. Bachmann,

Defendant. Civ. No. 02-856 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 16th day of April, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion for Summary Judgment. The Plaintiff Elaine Z. Fibranz ("Fibranz") appeared by Jeffrey D. Skonseng, Esq., and the Defendant Georgian Z. Bachmann ("Bachmann") appeared by C. Nicholas Vogel, Esq.

For reasons which follow, we recommend that Bachmann's Motion for Summary Judgment be granted.

II. Factual Background

This action arises from a falling-out between two sisters over their disputed interests in real property, which had been the

38

FILED APR 16 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK mjb

family farm that was owned by their now deceased parents. Until July 5, 2001, when she sold the property for $143,500.00, Bachmann held the deed to the property, evidencing an unencumbered, undivided, fee simple absolute interest, in the property. Fibranz does not dispute the fact that her sister held the deed to the property, but maintains that her parents' intention, in transferring the deed to Bachmann, was to permit the eventual transfer of a one-half interest in the property, back to Fibranz, after Fibranz's divorce was finalized.

By way of additional background, in 1974, the parties' parents conveyed the property to both sisters, thereby creating a joint tenancy. After that date, however, several other conveyances of the property were effected. First, the property was conveyed to Bachmann's daughter who, on the next day, reconveyed a one-half interest to Fibranz, and the other half interest to Bachmann, thereby destroying the joint tenancy, and creating a tenancy in common. Thereafter, in 1979, the daughters conveyed the property back to their parents, and their parents reconveyed an undivided, fee simple absolute interest in the property to Bachmann. Fibranz maintains that she transferred her interest in the property back to her parents, after Bachmann persuaded her to do so, for the stated reason of insulating the property if Fibranz were to divorce her then husband. As urged by Fibranz, it was Bachmann's alleged

misrepresentations which induced her to transfer her interest back to her parents, for reconveyance to Bachmann.

Although Fibranz appeared at the Hearing with legal counsel, counsel had only recently been retained, and her Complaint was filed pro se. See, Limited Certificate of Representation of Jeffrey D. Skonseng. The Complaint is labeled as a "Complaint for Accounting and Breach of Trust." Given the indulgence which generally attends the construction of pro se pleadings, Bachmann has charitably construed the Complaint as asserting claims for fraud, and breach of contract, in addition to breaches of an express and constructive trust, and we do likewise.[1]

---

[1]Since the asserted breach of contract claim fails for reasons distinct from those which undermine the other causes of action of Fibranz, we separately address that issue and, given the fatal deficiencies of Fibranz's allegations, we do so summarily. Neither Fibranz's Complaint, nor any evidence she has submitted in opposition to Summary Judgment, removes the purported oral agreement, allegedly by Bachmann, to transfer a one-half interest in the subject property to Fibranz, from the proscriptions of Minnesota's Statute of Frauds. Under Minnesota law, which is applicable to this question, "to constitute a contract, valid within the statute of frauds, to convey real estate, an offer in writing to sell must be accepted in writing." Lake Company v. Molan, 269 Minn. 490, 496, 131 N.W.2d 734, 738 (Minn. 1964); see also, Minnesota Statutes Section 513.04-05.

Stated somewhat more fully, in the context of an agreement to convey real estate, "in order to satisfy the Statute of Frauds there must be a writing containing (1) a statement of the consideration; (2) an adequate description of the parties; (3) an adequate description of the land; (4) the general terms and conditions of the transaction; and (5) subscription by the vendor." Bou-
(continued...)

## III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000). In this process, the Court must liberally construe a pro se Complaint. See, Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994); see also, Haines v. Kerner, 404 U.S. 519, 520-21 (1977).

---

[1](...continued)
ten v. Richard Miller Homes, Inc., 321 N.W.2d 895, 897 (Minn. 1982). Here, Fibranz neither pleads, nor proves, the existence of any such writing and, therefore, the breach of contract claim fails as a matter of law. While we construe Fibranz's pleadings charitably, her pro se status "does not alter either the substantive or procedural burdens [s]he must carry to survive summary judgment." Noland v. Commerce Mortgage Co., 122 F.3d 551, 552 n. 3 (8th Cir. 1997). Accordingly, Bachmann is entitled to Summary Judgment on Fibranz's supposed breach of contract claim.

For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the non-moving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026, 1028 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. The Defendant seeks Summary Judgment on all of the Plaintiff's claims, arguing that the claims are time-barred. In Fibranz's response to Summary Judgment, she originally argued that the forty-year Statute of Limitations, which is provided in the Minnesota Marketable Title Act ("MMTA"), Minnesota Statutes Section 541.023, applies so as to salvage her claims. At the Hearing, however, counsel for Fibranz conceded that the MMTA was inapplicable to the causes of action advanced by Fibranz. The concession is understandable for, as Bachmann urges, the six-year Statute of Limitations, that is contained in Minnesota Statutes Section 541.05, governs the Plaintiff's causes of action. See, Cherne Contracting Corp. v. Wausau Ins. Companies, 572 N.W.2d 339. 344 (Minn.App. 1997)(fraud), citing Minnesota Statutes Section

541.05(6)("For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud"); see also, Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985)(fraud); Minnesota Statutes Section 541.05(7)("To enforce a trust or compel a trustee to account, where the trustee has neglected to discharge the trust, or claims to have fully performed it, or has repudiated the trust relation"). Accordingly, having identified the applicable Statutes of Limitation, we are obligated to determine the date on which the Plaintiff's claims accrued.

The limitations period for fraud begins to run when the fraud is discovered or, in the exercise of reasonable diligence, should have been discovered. See Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985). The time when fraud reasonably should have been discovered is, ordinarily, a question of fact. Id., citing Murphy v. Country House, Inc., 240 N.W.2d 507, 512 ( Minn. 1976); see also, Peggy Rose Revocable Trust v. Eppich, 640 N.W.2d 601, 607-08 (Minn. 2002), citing Schmucking v. Mayo, 183 Minn. 37, 40, 235 N.W. 633, 634 (1931). Similarly, "the statute of limitations and similar rules affect the right to obtain a decree establishing a constructive trust, from the date when the wrongful and adverse holding begins and is, or should be, known to the plaintiff." Knox v. Knox, 25 N.W.2d 225, 231-32 (Minn. 1946). "As with other equitable

remedies, the plaintiff must act with diligence, but this diligence requires no more than that he shall act with reasonable promptness when he has acquired either actual or imputed knowledge of a wrongful withholding," and "[k]nowledge will be imputed to the plaintiff when, by the exercise of reasonable care, he should have known of the circumstances revealing defendant's adverse and inequitable role." Id. Finally, "[t]ime begins to run against an express trust only from the time a breach, disavowal, or repudiation thereof by the trustee is made known to the cestui que trust." In re Welles' Estate, 81 N.W. 549, 550 (Minn. 1900).[2]

---

[2]"Express trusts are those which are created by the direct and positive acts of the parties, by some writing, or deed, or will; or by words either expressly or impliedly evincing an intention to create a trust." American Sur. Co. of N.Y. v. Greenwald, 25 N.W.2d 681, 685-86 (Minn. 1946). "In order to constitute an express trust there must be: (1) a designated trustee subject to enforceable duties, (2) a designated beneficiary vested with enforceable rights, and (3) a definite trust res wherein the trustee's title and estate is separated from the vested beneficial interest of the beneficiary." In re Bush's Trust, 81 N.W.2d 615, 620 (Minn. 1957).

"[A] constructive trust is a judicially created equitable remedy imposed to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose." Wright v. Wright, 311 N.W.2d 484, 485 (Minn. 1981), citing Koberg v. Jones, 157 N.W.2d 47 (1968); Thompson v. Nesheim, 159 N.W.2d 910, 917 (1968); Knox v. Knox, 25 N.W.2d 225 (1946). Moreover, a constructive trust is found "whenever the legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship, a constructive trust arises in favor of the person equitably entitled to the property." Id., citing Kramer v. Kramer, 162 N.W.2d 708 (1968); Slagle v. Slagle, 244 N.W. 79 (1932).

While the issue of diligence, in discerning fraud, frequently raises questions of fact which are unsuitable for Summary Judgment, when "the evidence leaves no room for a reasonable difference of opinion * * * the court may properly resolve fact issues as a matter of law." Veldhuizen v. A.O. Smith Corp., 839 F. Supp. 669, 675 (8th Cir. 1993), citing Miles v. A.O. Smith Harvestore Prods., Inc., 992 F.2d 813, 817 (8th Cir. 1993); see also, Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 869-70 (D. Minn. 2001). As our Court of Appeals has recently explained:

> The Minnesota Supreme Court has construed [Minnesota Statutes Section 541.05, Subdivision 9(6)] as imposing a standard of objective reasonableness upon a plaintiff to discover the facts constituting the fraud. Bustad v. Bustad, 263 Minn. 238, 116 N.W.2d 552, 555 (1962). "[T]he facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered." Blegen v. Monarch Life Ins. Co., 365 N.W.2d 356, 357 (Minn.Ct.App. 1985)(quotations omitted). "A plaintiff must exercise reasonable diligence when he or she has notice of a possible cause of action for fraud." Butler v. A.O. Smith Harvestore Prods., Inc., 518 N.W.2d 537, 542 (Minn. 1994). A "'party need not know the details of the evidence establishing a cause of action, only that the cause of action exists'" in order for the limitations period to commence. Id. (quoting Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990)). A failure to actually discovery the fraud will not toll the limitations period if such a failure is inconsistent with this reasonable diligence standard. Blegen, 35 N.W.2d at 357.

Klehr v. A.O. Smith Corp., 87 F.3d 231, 235 (8th Cir. 1996), aff'd on other grounds, 521 U.S. 179 (1997).

As noted, though ordinarily a question of fact, in the context of reasonable diligence in discovering a fraud, "the court may properly resolve the issue as a matter of law," where the evidence leaves no room for reasonable minds to differ. Id., citing Miles v. A.O. Smith Harvestore Prods., Inc., supra at 817.

Fibranz commenced this action on April 23, 2002. As a consequence, the last date on which her claims might have accrued, in order to be timely asserted within the six-year Statutes of Limitations, would have been on April 23, 1996. In view of the Record presented, and viewing that Record in a light most favorable to Fibranz, we are, nevertheless, compelled to conclude that, in the exercise of reasonable diligence, Fibranz should have discovered the purported fraud, and any alleged breaches of trust, well prior to April 23, 1996, as no reasonable Jury could conclude otherwise.

The Record discloses that the relationship between Fibranz, and Bachmann, had substantially deteriorated by 1992. According to Fibranz's averment, in 1992, after their mother's death, "[Bachmann] and I became estranged as [Bachmann] irrationally repeatedly accused me of killing our mother." First Fibranz Affidavit, at p. 3. The relationship, however, had eroded before that time. According to Fibranz, unexpectedly, in May of 1978, Bachmann and her husband arrived in Anchorage, Alaska, where Fibranz and her ex-husband were then living, and imposed upon Fibranz to deed the

property back to their parents. Id. at p. 2. Although Bachmann has testified that she did not know her parents' motive in seeking the return of the ownership to the farm, Fibranz maintains that, secretly, Bachmann informed her that the exercise was to protect the property from any claims of Fibranz's then husband, should Fibranz subsequently become divorced. The Record discloses that Fibranz was divorced in 1981, but there is no showing that Fibranz requested the return of a one-half share of the farm until sometime in April of 1990 -- some nine years later.

In April of 1990, Fibranz traveled to Fergus Falls, Minnesota, in order to obtain a deed for the return of her share of the farm. According to Fibranz, Bachmann refused to sign the deed on that occasion, but merely deferred a decision to some later date. In an Affidavit, which was submitted after the Hearing, Fibranz avers as follows:

> In March of 1992 my mother, Helen Ziolkowski, and I were leaving for Alaska where she would live with me. The day before leaving for Anchorage, my mother, my sister Georgian Bachmann, her husband Bob Bachmann and I all agreed that it was time to deed the farm back into my name. My mother stayed home. When we arrived at the bank, Bob remarked, "Oh, the person we need to see is not in today." Georgian tole [sic] me in the car that we would have to do the paperwork later. When we arrived back to their home and my mother remarked, "That we quick." I once again replied to her that we had not done the paper-

> work to deed the farm back into my name. My mother was very unhappy about the situation.

Second Fibranz Affidavit, at p. 1.[3]

Notwithstanding these strained relations, between Fibranz and Bachmann, the Record does not reveal any attempt, by Fibranz, in the near decade, between the events in 1992, and her attorney's letter to Bachmann in May of 2001, to obtain the transfer of the one-half interest in the farm from Bachmann.

The absence of any such request seems particularly odd given the testimony of the Dertingers -- the parties uncle and aunt -- as well as Fibranz's own averment that, "[a]fter my mother's death, both Alfred Dertinger and Violet Dertinger kept urging me to fulfill our parents' wishes and urge Georgian [Bachmann] to reinstate the inheritance that both of us were to share jointly." First Fibranz Affidavit, at p. 3. We are unable to determine on this Record, and Fibranz does not otherwise disclose, what events in May of 2001 -- long after her failed attempts to gain Bachmann's acquiescence in a transfer of an ownership interest in the farm -- prompted her to retain legal counsel to pursue that end. We find

[3]The untimeliness of the Second Fibranz Affidavit is plain, but Bachmann does not expressly object to our consideration of the Affidavit, and we do so in order to be fully informed. While we think it quizzical that, notwithstanding her failure to refer to the events, as detailed in her belated Affidavit, in any of her questions during the deposition of Bachmann, Fibranz's ex-husband, or the Dertingers, who were the uncle and aunt of both parties, we are obligated to accept these averments in a light most favorable to Fibranz.

Fibranz's inattention to her claimed legal interest in the property to be objectively unreasonable, indeed, to such an extent that we conclude that no reasonable Jury could find Fibranz's conduct to be reasonably diligent. While Fibranz may not have wished to broach the subject of her purported ownership interest, between the time of her mother's death and May of 2001, that is an election she was entitled to make, but the applicable Statutes of Limitation would have no meaning, or purpose, if a litigant could delay the commencement of a cause of action until it suited that litigant's purposes to do otherwise.

Here, even after the letter from her attorney to Bachmann, in May of 2001, Fibranz awaited the passage of nearly another year before filing her suit against Bachmann. As the Minnesota Courts have explained:

> The general purpose of a [Statute of Limitation] is to "prescribe a period within which a right may be enforced, afterwards withholding a remedy for reasons of private justice and public policy * * *." Bachertz v. Hayes-Lucas Lumber Co., 201 Minn. 171, 176, 275 N.W. 694, 697 (1937).
>
> The statute discourages fraud and endless litigation and prevents a party from delaying an action until papers are lost, facts forgotten, or witnesses dead. A statute of limitation is based on the proposition that it is

> inequitable for a plaintiff to assert a claim after a reasonable lapse of time, during which the defendant believes no claim exists. Id.

Karels v. American Family Mutual Ins. Co., 371 N.W.2d 617, 618 (Minn.App. 1985), aff'd, 381 N.W.2d 441 (Minn. 1986); see also, Bartlett v. Miller and Schroeder Municipals, Inc., 355 N.W.2d 435, 439-40 (Minn.App. 1984)("Statutes of limitation serve a general purpose of repose, the interest of both the defendant and society in freedom from stale claims, * * * and "[t]he statutes also serve to ensure that defendants are given notice of claims so that they may preserve relevant evidence."), citing Bachertz v. Hayes-Lucas Lumber Co., 201 Minn. 171, 176, 275 N.W. 694, 697 (1937), and Burnett v. New York Central Railroad Co., 380 U.S. 424, 428 (1965).

As the Record amply reflects, Fibranz's delay in commencing this action prejudices Bachmann's ability to mount a defense, due to the deaths of material witnesses, such as Bachmann's husband, and the dulling of recollections, as a result of the passage of time, like those of the Dertinger's. Fibranz does not allege, let alone prove, that there are grounds, other than her contention that she was the victim of fraud, to toll the applicable Statute of Limitations, and we are aware of no such grounds.

"Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," and "[t]he theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the

right to prosecute them." Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-49 (1944); see also, Swenson v. Emerson Elec. Co., 374 N.W.2d 690, 695 (Minn. 1985) ("The policy of statutes of limitation is to compel the exercise of a right of action within a reasonable time so that a defendant will have a fair opportunity to prepare an adequate defense"). In this instance, Fibranz awaited the disposition of the farm, through a sale, before commencing her action.[4] While we understand Fibranz to question the fairness of allowing Bachmann -- at least in Fibranz's view -- to deny the inheritance that their parents had intended for her, there is also ample unfairness in allowing a litigant to rest on his or her rights until the future discloses some benefit, and then permitting that litigant to "turn back the clock" in order to file a claim that was without sufficient interest to have been generated when ripe, and timely.[5] Accordingly, we find that the Plaintiff's claims are time-barred, as a matter of

---

[4]The Record reflects that, on July 5, 2002, Bachmann and her late husband executed a Warranty Deed for the farm in exchange for the payment of $143,500.00. See, Defendant's Exhibits 7 and 8 in Support of Motion for Summary Judgment [Docket No. 25].

[5]Rather than being sold at a handsome price, we rhetorically question whether Fibranz's interest in the property, would have been stirred from its death-like slumber, had the farm been the site of an environmental disaster, requiring its owner to incur costly remediation expenditures, or if the farm, and its owner, were the target of a class action, toxic tort, lawsuit.

law, and we recommend that the Defendant's Motion for Summary Judgment be granted.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion for Summary Judgment [Docket No. 23] be granted.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 2, 2003,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no**

**later than May 2, 2003,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.